IN RE ESTATE OF ADAM DOLMAGE.

C. C. HOVEY, Administrator, Appellant, v. FRANK DOLMAGE et al., Appellees.

**TRIAL:** Instructions—Statement of Party's Claim. Copying the pleadings into the instructions and instructing that such were the issues constitute error when pure questions of law are intermingled in such pleadings. (See Book of Anno., Vol. 1, Sec. 11493, Anno. 278 *et seq.*)

**TRIAL:** Instructions—Amount of Proof—Law and Equity Contrasted. A claim against an estate, *triable at law*, is established by a fair· preponderance of the testimony, and reversible error results from instructing that such claim must be established only by "strict and satisfactory" proof.

**TRIAL:** Instructions—Testimony—Weight and Sufficiency—Effect of "Improbabilities." "Improbabilities" in certain features of the testimony relative to a party's claim do not constitute a *defense*, and the court must not so instruct. (See Book of Anno., Vol. 1, Sec. 11493, Anno. 56 *et seq.*)

Headnote 1:   4 C. J. p. 1031; 38 Cyc. pp. 1511, 1611 (Anno.)  Headnote 2:   4. C. J. p. 1031; 24 C. J. p. 404; 38 Cyc. pp. 1750, 1754 (Anno.) Headnote 3:   4. C. J. p. 1031; 38 Cyc. p. 1739 (Anno.)

Headnote 1:   14 R. C. L. 728.

*Appeal from Iowa District Court.*—RALPH OTTO, Judge.

APRIL 5, 1927.

PETITION FOR REHEARING DISMISSED BY APPELLEE

SEPTEMBER 23, 1927.

Action in probate upon a claim filed by the administrator of the estate of Florence Dolmage against the executors of the

estate of Adam Dolmage, deceased, based upon an alleged contract whereby it is claimed that said Adam Dolmage agreed to convey a third of his property to said Florence Dolmage in consideration of her marrying him. A general denial was filed, and the cause submitted to the jury, which returned a verdict for the defendant; and from a judgment dismissing the plaintiff's claim this appeal is prosecuted.—*Reversed.*

*Wallace & Claypool, E. P. Cronin,* and *Bernard McNeny,* for appellant.

*Havner, Flick & Powers, T. A. Lane,* and *C. H. Murphy,* for appellees.

FAVILLE, J.—Florence Harwood and Adam Dolmage were married on the 20th of September, 1923. At that time, Florence was 47 years of age, and Adam was 68. They had been acquainted since the previous January. On the 27th or 28th of December, 1923, Adam killed his wife, and killed himself shortly thereafter. Appellant's claim is predicated upon the contention that, on March 12, 1922, Adam, who then lived at Victor, Iowa, wrote to Florence, who then resided in Chicago, a letter, in which he said to her:

"Your presence seems to make me happy and makes life worth living and would like to arrange to have you in my home and to look after me and have lots of property and can well afford to pay you so you can always support your mother. I am going to make you an offer that I know you will accept, if you will agree to quit your job, go and live with me and keep house for me and look after my wants the balance of my life, and agree to later marry me, I will transfer to you one third of all my property. You know from what I have told you that this will make you a good nest egg and you will *Always Have Plenty* of money for Yourself and to Keep your Mother. Let me know Florence What You Say."

The original letter referred to was not offered in evidence, but it is the contention of the appellant that a true copy of said letter was made by a witness, who produced the same in evidence. It is contended that the proposition was accepted by

Florence, and that said parties were married, as stated, and lived together until the tragedy of their deaths.

I. It is contended that the court erred in stating the issues to the jury. In so doing, the court used the following language:

"Further answering, defendants state that said alleged contract is void, and cannot be introduced, under what is known under the statute of frauds; that the same is without consideration, and against public policy. Such, in substance, are the issues as made by the pleadings in this case."

The answer of the appellees pleaded that the contract sued upon was void, under the statute of frauds, and that it was without consideration, and contrary to public policy. Appellant's contention is that the questions raised by this allegation were solely questions of law, which the court was called upon to determine in the trial of the cause, and that, although it was within the substance of the pleading, it was error for the court to state that these questions were part of the issues in the case. The statement was in the general preliminary statement of the court, preceding Instruction No. 1. In the recent case of *Lange v. Bedell*, 203 Iowa 1194, considering a somewhat similar situation, we said:

1. TRIAL: instructions: statement of party's claim.

"The preliminary statement of the issues by the court was nothing more than a recital of the allegations of the petition and the answer. It is no doubt the better practice for the court to omit entirely from the preliminary statement all issues that have been withdrawn, or that should not, because without support in the evidence, or for some other reason, be submitted to the jury. This is frequently not done. The mere statement of the allegations of the pleadings to the jury does not operate as a submission of a question to the jury. The law by which the jury must be governed is always stated, following the recital of the allegations of the pleadings."

In *Veith v. Cassidy*, 201 Iowa 376, we said:

"We have repeatedly condemned this method of stating the issues to a jury. Like all pleadings, those in the instant case contain surplus matter not necessary to a proper pleading. It is the duty of the court, in stating the issues in instructions, to select the material allegations of the pleadings of the parties which make the real issues in the case, and state them in such a

way that the jury may understand the exact contentions of the respective parties. To copy the ordinary pleading in full, with the usual elaborations contained therein, and then tell the jury that the issues and questions under dispute are above set forth, permits them to speculate, and possibly turn their decision on a matter which is wholly immaterial, and not an issue in the case. *Swanson v. Allen*, 108 Iowa 419; *Gorman v. Minneapolis & St. L. R. Co.*, 78 Iowa 509; *Robinson & Co. v. Berkey & Martin*, 100 Iowa 136.''

The court was in error in submitting the issues in the manner stated.

II. The court instructed the jury in one instruction as follows:

''You are instructed that the burden of proof is on the claimant, and before he can be entitled to an allowance in your verdict on account of the matters alleged in his claim, he must

2. TRIAL: instructions: amount of proof: law and equity contrasted.

establish and prove, by a preponderance of the evidence,—that is, the greater weight of the evidence, and by evidence which to your minds, as reasonable persons, appears to be clear and satisfactory * * * .''

In another instruction the court said:

''His allegations as to the making of the alleged contract must be established, as you have been told, by the preponderance of the evidence and by evidence which to your minds, as reasonable persons, is clear and satisfactory.''

In another instruction the court said:

''For the reason that the only witness who could deny the making of the contract as alleged by claimant is dead, and the claim is made against his estate, it is your duty to closely scan the evidence adduced by the claimant in support of his allegations with respect to the making of the contract upon which he relies. What I have just said must not make you overly cautious; for, if claimant has established his case by a preponderance of the evidence, and by evidence direct and positive and satisfactory to your minds, the claim sued upon should be allowed in some amount. The thought is simply that, being the sole judges of the weight of the testimony, and it being within your province to find the very truth of the facts in this case, you

should hold a tight rein over the claimant, and require of him strict and satisfactory proof of his demands.''

Appellant contends that these instructions are erroneous, in that they placed too heavy a burden upon the appellant, in requiring the appellant to establish his claim ''by evidence which to your minds, as reasonable persons, appears to be clear and satisfactory,'' and other like statements.

From an early day we have recognized the distinction between the degree of proof required in ordinary actions and in actions in equity. Code of 1924, Section 11963, provides that, in the hearing of a contested claim in probate, ''all provisions of law applicable to an ordinary action shall apply.'' In *McAnnulty v. Seick*, 59 Iowa 586, we said:

''It is insisted that a bare preponderance of evidence is not sufficient, but that the proof should be strong, clear, and satisfactory. The rule by which a chancellor governs his own action in cases in which it is sought by parol evidence to convert a deed absolute on its face into a mortgage, is that the 'proof should be clear, satisfactory, and conclusive.' *Corbit v. Smith,* 7 Iowa 60; *Hyatt v. Cochran,* 37 Iowa 309. To the same effect see *Cooper v. Skeel,* 14 Iowa 578; *Maple v. Nelson,* 31 Iowa 322; *Epps v. Dickerson,* 35 Iowa 301. It is, however, the established law of this state that questions of fact submitted to a jury in civil cases are to be determined by a preponderance of evidence. *Welch v. Jugenheimer,* 56 Iowa 11.''

In equity cases involving a contract with a decedent to give and convey property in consideration for services, it has been the uniform rule that the proof of such contract must be clear, convincing, satisfactory, and referable to the contract. *Johnston v. Johnston,* 19 Iowa 74; *Truman v. Truman,* 79 Iowa 506; *Wilson v. Wilson,* 99 Iowa 688; *McDonald v. Basom,* 102 Iowa 419; *Holmes v. Connable,* 111 Iowa 298; *Chew v. Holt,* 111 Iowa 362; *Briles v. Goodrich,* 116 Iowa 517; *Bevington v. Bevington,* 133 Iowa 351; *Boeck v. Milke,* 141 Iowa 713; *Stennett v. Stennett,* 174 Iowa 431; *Lynch v. Coolahan,* 177 Iowa 179; *Hart v. Hart,* 181 Iowa 527.

In *Jamison v. Estate of Jamison,* 113 Iowa 720, we considered an action at law, to recover damages by reason of the failure of a decedent to convey or will a tract of land in consideration of certain promises. We therein said:

"The court instructed, in substance, that plaintiffs must establish their case by a fair preponderance of the evidence. This instruction is objected to for two reasons: First, because of the use of the word 'fair;' and second, because in such action plaintiff must make out his case by clear, satisfactory, and convincing evidence. Neither of these positions is tenable. The use of the phrase 'fair preponderance of the evidence' has already been approved. *Bryan v. Railroad Co.*, 63 Iowa 466. And in law, questions of fact are to be determined from the preponderance of the evidence. *McAnnulty v. Seick*, 59 Iowa 590; *Farmers' Co-operative Soc. of Geneva v. German Ins. Co.*, 97 Iowa 749."

*Hutton v. Doxsee*, 116 Iowa 13, was a case where in one count a claim was made for damages growing out of the failure of the decedent to comply with a contract whereby the decedent agreed, upon a consideration, to deed claimant a certain farm. We said:

"Defendant asked an instruction to the effect that plaintiff must prove his case by clear, unequivocal, and definite testimony. This was refused, and in lieu thereof the court instructed that a preponderance of the evidence was sufficient. There was no error in this. *Jamison v. Jamison*, supra. We are asked to say that that case is erroneous, and to overrule it. As it follows two other cases theretofore decided by this court, and simply reaffirms a rule of long standing,—one which seems to have support in the great majority of cases,—we do not feel like disturbing it. The distinction between the measure of proof in law and in equity cases in this respect has always been preserved by this court. All the cases relied on by appellant, save one, were suits in equity. In the exceptional case, no question was made of the. instruction."

*Thompson v. Romack*, 174 Iowa 155, was an action in probate on the claim for the value of a farm because of the failure of the decedent to will or deed the same under no express contract to do so. We therein said:

"Cases are cited by appellant, holding that the evidence must be clear, satisfactory, and convincing. As stated, this is not a case to set aside a deed or for specific performance, and we think a preponderance of the evidence is all that is required in a case of this kind. The action was to establish a claim

against the estate.  *Mosher v. Goodale,* 129 Iowa 719; *Jamison v. Jamison,* 113 Iowa 720; *McAnnulty v. Seick,* 59 Iowa 586: *Welch v. Jugenheimer,* 56 Iowa 11; *Hutton v. Doxsee,* 116 Iowa 13.''

See, also, *Snyder v. Guthrie,* 193 Iowa 624.

It therefore is clear that we have, since the early history of the state, recognized a distinction between the general class of cases involving claims of this character against estates, as to the degree of proof required where the action is in equity and where it is in the nature of a claim against the estate of a decedent, triable at law.  The only case that is called to our attention that appears even to be out of harmony with the general rule is *In re Estate of Rich,* 199 Iowa 902.  In that case the proceeding was in probate, to establish a claim against the estate of the deceased.  The claim was in two counts: the first in the nature of a claim for services, and the second upon a contract to leave a part of an estate to the claimant, for services rendered.  The court directed a verdict for the estate as to the second count.  We reviewed the evidence on the second count, and held that the court did not err in directing a verdict for the estate.  In the course of the argument we said:

''We have held that the evidence must be clear, satisfactory, and convincing, and that the acts relied upon to constitute performance should be equally clear, and referable exclusively to the contract'' (citing *Stennett v. Stennett,* supra, *Hart v. Hart,* supra, *Lynch v. Coolahan,* supra,—all of which, as we have seen, were cases in equity).

The rule of law as stated is correct as applied to an equity case, and the conclusion in the *Rich* case, although the action was at law, was correct.

The instructions above set forth placed too great a burden upon the appellant in this action.  They cannot be sustained, in view of our well established rules in cases of this kind, and necessitate a reversal of the action.  In this connection, we have considered the instructions as a whole.  When they are so considered. there is nothing therein that overcomes the error in giving these instructions.

III.  In another portion of Instruction No. 3 the court instructed the jury as follows:

''You are instructed that you are authorized by law to treat

any improbabilities which you may find in the evidence related by witnesses, if there be any, as a defense, when tested by comparison with all the other evidence in the case and by the ordinary rules of human conduct as known to you through your knowledge of persons and affairs, and your own experience of life.''

3. TRIAL: instructions: testimony: weight and sufficiency: effect of ''improbabilities.''

This instruction cannot be successfully defended. It is not the law that the jury are authorized to ''treat any improbabilities'' which they may find in the evidence ''as a defense.'' Improbabilities in the testimony do not constitute ''a defense.'' They are proper for a jury to take into consideration in determining the truth of the matters submitted to them, but in no proper sense can it be said that ''any improbabilities'' in the testimony are ''a defense.'' The court was unhappy in the choice of the language used to express the thought which was undoubtedly in the mind of the court. We think that the instruction as framed was prejudicial and erroneous.

Appellees contend that, even though errors were committed by the trial court in the instructions, nevertheless the errors were without prejudice, because of the fact, as contended by appellees, that the court should have sustained the appellees' motion for a directed verdict, on the ground that, in no event, under the record, was the appellant entitled to recover. We limit our decision in this case expressly to the questions raised by the appellant on this appeal and to the errors herein pointed out, and we expressly reserve any pronouncement upon any other questions argued by the appellees.

It necessarily follows that, because of the errors pointed out, the judgment of the district court must be, and it is,— *Reversed.*

All the justices concur.